Nott, J.,
concurring:
The proceeds of one hundred bales of cotton, as appears from the evidence in this case, came to the Treasury of the United States. It is not to be understood that the money reached the vaults of the Treasury in the city of Washington; but it is to be understood that the cotton was sold, the proceeds paid into the hands of a supervising special agent of the Treasury, and that while in his hands they were placed at the actual disposal of the Secretary of the Treasury, and were actually ' disposed of as he expressly directed they should be. “ As soon as the money reached the Treasury,” to quote the words of the Supreme Court, “ the right to prefer a claim attached.", (Anderson’s Case, 7 C. Cls. R., pp. 125-6.) Therefore, at that moment when the money derived from the sale of the claimant’s property came under the immediate direction and control of the head of the Treasury, the claimant’s equitable rights became fixed, and the Government was invested with the character of a trustee, and assumed the responsibilities and liabilities of the trust. The claimant also, eo instcmti, acquired the character of a cestui que trust, and his right to prefer a claim to the money attached to the fund.
lb is now proposed by the Government that this court shall disarrange these legal relations of the parties as defined by the Supreme Court, and assign them to a subsequent time, when the amount of the proceeds had been reduced by the intentional and voluntary act of the Secretary of the Treasury. It is not proposed to show a subsequent loss suffered by the trust estate, such as would excuse á trustee from responding to the amount placed in his hands, but' simply to postpone the legal relations of the parties from a day on which the Supreme Court said they began to a subsequent day, when the liability which *479 the law created would be lessened by the trustee’s own act. Since the Supreme Court has construed the statute as it has, it seems to me that this postponement of responsibility cannot be maintained.
But, in addition to the fact that all of the proceeds of the property reached the Treasury, it is apparent, I think, that in contemplation of law they are still there. A person claiming to be an informer sought one-half of the proceeds of the cotton after they had thus reached the Treasury. If they had been given away by the Secretary, the' title to them being in the claimant and not in the Government, it might be a question whether the Government would continue responsible a.s trustee, or an action lie against the Secretary for his unlawful act. But it appears in this case that they were not given away absolutely by the Secretary, and that the question of resulting liability on the part of the Government was considered and provided for. Before the proceeds were given up a sufficient “ bond of indemnity” was required from the informer, which he executed and gave. The bond has not been sent down from the Treasury Deparment in this case, but the form of it appears elsewhere, and we may infer that it was a bond executed by himself and two sureties under a penalty upon the following conditions: “That, if the said Sherrard Clemens shall now and at all times well and truly keep and save harmless and indemnify the United States, and any and all agents of the same, of and from all claims and demands, and all proceedings by suit or otherwise, on account of any matter or thing done by them or any of them concerning the said cotton or the proceeds thereof, and of and from all damages, actions, or proceedings of any kind which are now or may hereafter be instituted on account of said cotton, its seizure, detention, or sale, or the detention of the proceeds thereof, or the payment thereof, to the said Sherrard Clemens; and if, at any time hereafter, on its being made to appear that any statement on account of which the release of the said proceeds or the payment thereof to the said Sherrard Clemens has been granted or made are untrue, or that the right of property was not as stated in the application for such release or payment, and that said cotton was subject to forfeiture and confiscation, or in anywise to be sold or appropriated to the use of the United States, the said Sherrard Clemens shall return the said proceeds to the said William P. *480 Mellen, supervising special agent as aforesaid, or to the Secretary of the Treasury, upon demand therefor, then this obligation to be void; but otherwise shall be and remain in full force and virtue.”
Now what is the position which the Government occupies here? It is clearly that of trustee, who, holding an indemnity for a portion of the trust estate which he has voluntarily disposed of, comes into court and asks to be relieved from all responsibility for his breach of the trust without being compelled to resort to the indemnity which he holds. I apprehend that there is no authority to maintain such a proposition; but that, on the contrary, the trustee will be held to make whole the estate to the cestui qui trust and then resort to his indemnity.
It is the declared intention of the law that the owner shall receive all of the proceeds of his property after the deduction of the “ lawful expenses attending the disposition thereof; ” (Abandoned or captured property Act, 12 Stat. L., p. 820, s. 3;) and the Supreme Court has declared that as to these proceeds the Government is a trustee on the one hand, (Padelford’s Case, 7 C. Cls. R., p. 150,) and the title of the original owner is not divested on the other. (Klein’s Case, id., p. 243.) It follows necessarily that whatever these proceeds of the property may be, whatever form they may have assumed, however they may have been diminished or multiplied, they belong to the claimant and cannot possibly belong to the Government. If they have been invested in any form of securities, the securities inure to the benefit of the cestui que trust; if any interest has accumulated upon them it is a part of the proceeds and belongs to the owner of the property; the Government being but trustee, it is absolutely impossible for the Government to make anything out of the proceeds, or to derive any benefit from the trust beyond repayment of the “ lawful expenses attending the disposition thereof. ” It follows that if any bond had been taken from the informer which would inure directly to the benefit of the claimant, and upon which he might maintain an action, that the decree ought to direct that it be given up and assigned to the claimant for prosecution. But the bond which Clemens, the informer, did give was one strictly of indemnity to the United States to save the Government harmless from a recovery by the true owner of the property; and as there is no pretense that *481 Clemens or bis sureties are insolvent, and as the Government has. guarded itself against this very contingency, there is no reason why the court should take the informer, who had no right whatever to the property, under its protection and assure him the possession of proceeds to which he was never entitled, at the cost of the owner, whom the law has assured as to all of the proceeds “after the deduction” only of the “ lawful expenses attending the disposition thereof.”